IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | **Case No.** 5:26-cv-05316 |
| **SHAWN ARRINGTON and JENNIFER** | § | |
| **DEAN**, in their official capacities, | § | |
| *Defendants* | § | |

**Declaration supporting emergency relief**

1. I am the Plaintiff requesting permission to proceed as John Doe. My true identity, address, and contact information are tendered confidentially. I have personal knowledge of the events and activities described below, except where I identify a statement made to me or a document's contents.

2. I am a Texas parolee who transferred to Arkansas and now lives in Springdale with my elderly parents. My mother has failing sight. Texas remains the sending and sentencing state; Arkansas supervises me as the receiving state.

3. My Texas parole began October 1, 2020, while I remained in local custody pending retrial from a 1996 indictment. I have lived in the community since September 2022, apart from an approximately 120-day ISF sanction in May–August 2024. That sanction was not a revocation; I dispnte the alleged violations underlying it and am pursning federal relief for knowing false statements made by officials. While I do not describe my history as uninterrupted or sanction-free, pending resolution of the federal challenge to the false statements made in support of the sanctions, but I do assert that it is free of any knowing violation, technical or otherwise.[1]

---

1 Early in my supervision in Texas, my GPS device signaled a low battery, and I was verbally admonished; however, my Parole Officer later discovered that the charging attachment was defective.

4. My Texas offenses of conviction did **not** involve use of computers or the internet to contact minors or facilitate the offenses. Furthermore, since my release, I have used the internet during the full term of community supervision in Texas, apart from the ISF interruption, as well as during my time on supervision in Arkansas up to November 9, 2026. My work and online treatment are described below and in the signed letters attached as Exhibits D and E.

5. Near the end of business hours on June 1, 2026, before transferring to Texas, I spoke by telephone with Jennifer Dean about Arkansas supervision. She explained that Arkansas sex offenders without computer-related offenses had no internet restrictions; people who used computers to contact minors, facilitate offenses, or produce or consume child sexual abuse material fell into the restricted category; and work and school exceptions with third-party monitoring were available within that category. I uoted that Texas has precisely the same policy.

6. At my October 19 intake meeting in Rogers, I related Dean's explanation to Officer Shawn Arrington. He referred to "internet grooming" in describing my history. I immediately noted that there were never any proceedings, charges, or even allegations of "internet grooming" in my records, and I discussed my federal acquittal of child pornography charges (possession on a remote computer), in with I never possessed or even knew about the image files. I described the evidence found by experts working for the Federal Public Defender's Office, including the verified computer logs from the remote system, that another actor, down to individual name and address. Arrington acknowledged the acquittal but continued discussing the arrest and alleged conduct.

7. For the record: in that federal case, my lawyer and I maintained that the conduct alleged and proved did not constitute a crime under the statute then applicable. We moved under Rule 29 after the government rested. We then rested without presenting our factual defense to keep the

evidentiary record closed. The jury returned a guilty verdict; the judge subsequently entered a judgment of acquittal on the legal deficiency. We did attempt, prior to trial, to share with the U.S. Attorney's Office and the FBI how the evidence showed the actual individual who possessed and transferred the files, but they were not interested in that evidence. Regardless, I did not possess or know about the image files. The acquittal's legal basis and my factual denial are distinct; I do not claim the judge adjudicated evidence we did not present.

8. On October 19, Arrington ordered deletion of social-media accounts and said removing applications alone was insufficient. He described the category broadly in terms of platforms permitting any form of conversation with another person. When I explained that not all platforms exclnde registered persons, he relied on ACC policy.

9. He specifically required deletion of Cash App, which I had used for financial services for more than four years, because users can exchange messages in connection with payments. He acknowledged the lack of clear guidance but required deletion. He also required deletion of an empty YouTube channel. I removed applications and disabled the YouTube channel that evening and reported compliance the next day.

10. On October 20, Arrington required deletion of my Chess.com account. Its loss included the accumulated rating and game history. I explained that my employer uses WhatsApp and my treatment uses Google Meet. (I distinguish platforms discussed in the meeting from accounts he expressly ordered deleted.) The October account-deletion instructions were independent ACC directives; SOAP's assessment package had not yet been imposed at that time.

11. During the October 20 meeting, I was told that a court order would be required to obtain the records at issue. Dean's October 23 email directed me to the officer and grievance process and repeated the court-order requirement. Exhibit H is a copy of that email exchange.

12. On October 25, I placed my records-accuracy and social-media grievances in U.S. Mail using self-service-kiosk certified-mail labels and postage. USPS recorded receipt and processing early October 26. Exhibits I and J are my retained copies of the grievance texts. As of the filing date, I have received no response to any grievance.

13. At my regular meeting with Arrington on November 2, I said I had filed the grievance Dean directed concerning submission of my paperwork to SOAP but noted that I still had the paperwork available if there was another route. He said we had to follow Dean's email and there was no way for him to accept it.

14. Later that day, Arrington called to say SOAP had completed its without any input from me. He told me to return Thursday, November 5, at 10 a.m., to meet with Officer Maybe for the results. By the time I finished filling out the forms SOAP required, however, Officer Maybe had other obligations, and Arrington instructed me to come back on Monday, November 9, at 9 a.m. Attachment A records what occurred, what materials I received, and the restrictions and implementation dates actually communicated.

15. I assembled employment and treatment materials to support an accurate assessment, including the October 2 letters attached as Exhibits D and E. My request to submit them and correct the record preceded announcement that SOAP had finished. I have not been given confirmation identifying which of my materials SOAP actually considered, but based on the

comments made by Arrington and the imposition of conditions, I believe that SOAP is relying on specious records of some sort.

16. I work remotely as a criminal-defense paralegal for the employer identified in confidential Exhibit D. My work requires internet access, legal research, digital documents, and communications. Deadlines recur throughout the work. Internet access is how I receive assignments and information necessary to identify and meet those deadlines; I cannot reduce the need to one isolated future date.

17. My employer's October 2 letter describes our digital practice, his familiarity with my work, and accommodations that permit me to work effectively. He explains that private monitoring capturing client material through keystrokes or screenshots would prevent him from assigning the work. Exhibit D is the letter I received, with only the redactions identified in the public copy. I seek a supervision arrangement that permits lawful oversight and preserves confidential client information.

18. Most of my accounts are paperless. I depeud on email and online access to learn of account activity and obligations, to approve credit purchases, and to monitor any potential misuse of my credit cards. Even a careful audit could miss an infrequently used account or a notice that has not yet arisen. If access is cut off, au unseen notice can go unanswered without my knowing it exists. Later restoration of access cannot guarantee recovery of every missed opportunity or deadline.

19. I await judicial rulings in two Texas matters. The state matter is a pending ancillary proceeding in a Texas state criminal court, identified in the confidential counterpart. It concerns property held by the district attorney's office in ancillary proceedings in a final-judgment criminal case. An adverse ruling will require appellate action and electronic filing. The federal

matter is a Texas federal district-court action, identified in the confidential counterpart. I await judicial action on a Rule 59(e) motion and will need appellate proceedings if the motion is denied. I need continuing access to monitor the proceedings, research, prepare, and file timely papers.

20. My current parole-related sex-offender treatment occurs online every Monday from 6 to 7:30 p.m. Based on the conditions imposed Monday morning, I missed the session scheduled for Monday, November 9; the next session is Monday, November 16. My treating psychologist, the psychologist identified in confidential Exhibit E, recommends continuation of the group and accommodated remote employment. His signed October 2 letter is Exhibit E.

21. VA mental-health treatment remains pending. On November 3, a clinical psychologist or mental-health provider sent texts and online forms concerning that care, and the VA scheduled a video telehealth appointment for Friday, November 13, at 11 a.m.

22. An outside psychiatrist's medical review is pending in connection with my VA compensation claim. Notice of the claim was sent in January 2026, and the claim remains pending the psychiatrist's review. My only avenue of communication with that office is email. A cutoff would sever that channel while the review remains unresolved.

23. I want to continue lawful communication, reading and receipt of information, financial transactions, professional activity, online treatment, and ordinary recreational uses such as online chess. The account orders have already eliminated uses described above. Attachment A identifies the additional activities prohibited by the November 9 directives and what will happen before an ordinary response and hearing schedule can protect me.

24. I intend to comply with operative directions while seeking administrative and judicial relief. I seek continued lawful access, written limits, and individualized consideration of my circumstances. Attachment A records my request to preserve access during review and the actual response, including the refusal of Arkansas officials to stay the imposition of the ban pending administrative grievances.

25. Exhibit B is the Arkansas condition material supplied in the transfer process. Its original six-page file includes a compact transmittal and printed condition pages 3–7; printed condition pages 1–2 were not supplied with that file. It is not a substitute for the actual November 9 directives, which are identified and attached to Attachment A.

26. The identifying information omitted from this public declaration is supplied in the confidential version tendered with my privacy motion. The employer and clinician letters and email and grievance exhibits are furnished in public redacted and confidential unredacted versions. Redactions protect identity and specified clinical or household information; they do not change the directives or requests described here.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on Nov. 10, 2026.

John Doe

John Doe, pro se
True identity and contact information supplied confidentially
with the motion for pseudonymity and sealing.