**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**MATTHEW JAMES LEACHMAN** **PLAINTIFF**

**v.** **Case No. 5:26-CV-05316-DCF**

**SHAWN ARRINGTON;**
**JENNIFER DEAN** **DEFENDANTS**

# ORDER

Before the Court is Plaintiff's Motion for Administrative Stay Pending Interlocutory Appeal (Doc. 13) and Motion for Reconsideration of the Motion for Temporary Restraining Order (TRO). For the reasons stated below, the Motion for Administrative Stay will be GRANTED IN PART and DENIED IN PART. The Motion for Reconsideration (Doc. 14) will be DENIED.

## I. MOTION FOR ADMINISTRATIVE STAY PENDING INTERLOCUTORY APPEAL

Plaintiff's motion was filed in response to the Court's order denying his request to proceed as "John Doe." (Doc. 13, p. 2). He argues the denial was "irregular" because it was "without any delay or option for Plaintiff to withdraw or re-plead." (*Id.*). The Motion requests that the Court "STAY the portion of its ORDER (Dkt 11) directing disclosure of Plaintiff's identifying information for 21 days" while Plaintiff seeks an interlocutory appeal. (*Id.*). The Court is also asked to extend the administrative stay as needed while awaiting a ruling from the Eighth Circuit. (*Id.*).

Nothing in the Federal Rules of Civil Procedure explicitly permits a plaintiff to file an action under a pseudonym. To the contrary, Rule 10(a) requires that "[t]he title of the complaint must name all the parties." Rule 11(a) requires that if a party is unrepresented, every pleading, motion, and other filing must be signed personally by that party. Rule 17(a) mandates that "[a]n action must be prosecuted in the name of the real party in interest." "Generally, parties to a lawsuit must identify themselves in their respective pleadings." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979)). This "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Frank*, 951 F.2d at 322 (citations omitted). Further, "courts have declined to allow plaintiffs to proceed pseudonymously where [plaintiffs' sole reason was because they] feared they would face disapproval by many in their community if they prosecuted the case under their real name," as appears to be the case here. *See Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1077 (8th Cir. 2024). While the Court acknowledges that generally parties are given a brief period to withdraw or replead; by Plaintiff's own admission, any additional time to do so would have been moot as he would still have sought an interlocutory appeal.

Federal courts have analyzed the issue of whether a plaintiff may file

under a pseudonym, including district courts within this circuit. *See In re Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *1 (E.D. Mo. Apr. 6, 2016). By looking at the totality of the circumstances, these courts have ascertained whether a plaintiff "has a substantial privacy right which outweighs the customary constitutionally-embedded presumption of openness in judicial proceedings." *Roe v. St. Louis Univ.*, 2009 WL 910738, at *3 (E.D. Mo. Apr. 2, 2009) (quoting Frank, 951 F.2d at 323). This analysis includes a consideration of several factors, such as "(1) [whether] the plaintiff is challenging government activity; (2) [whether] the plaintiff is required to disclose information of the utmost intimacy; and (3) [whether] the plaintiff risks criminal prosecution through the information contained in the pleading." *Roe,* 2009 WL 910738, at *3 (citations omitted); *see generally Cajune*, 105 F.4th 1076-77 (describing a more recent application regarding pseudonymous proceedings using similar factors).

Here, Plaintiff acknowledges that while he is challenging government activity, he is not concerned about disclosure of his information to the Defendants as "the officials already know whom they supervise," (Doc. 5-1, p. 2). The Court notes that his name and address were provided in the Summons. (Doc. 8). Instead, he appears to rest his argument on the disclosure of information related to his health, work conditions, and his address as that of the

utmost intimacy. Specifically, Plaintiff wants to prevent disclosure of "letters discuss[ing] mental-health conditions, functional limitations, and [mental health] treatment history" and prevent disclosure of the address of his parents, with whom he resides, to avoid "additional exposure." (Doc. 5-1, p. 2).

However, the documents discussing the health and employer information Plaintiff seeks to protect were filed under seal[1] and remain under seal. As such, the docket does "not publicly attach[] that detailed clinical account to a named person and his household," which was Plaintiff's primary concern. (*See id.*). In fact, the Court's Order only required Plaintiff's name and contact information to be added to the docket. (Doc. 11). It did not require any documents to be unsealed.

The Court's Order does not require disclosure of the majority of personal details Plaintiff seeks to protect, and there is no language in the Order that prevents Plaintiff from filing his documents under seal. (*Id.*). While it is true that Plaintiff's contact information (address) is now disclosed on the docket, and this is one of the items Plaintiff sought to redact, this information was already publicly available. Plaintiff is a convicted sex offender, and his name is searchable and appears on the National Sex Offender Public Website. Moreover, in light of Plaintiff's status as a sex offender, a key consideration for this Court

[1] Documents 1-9 were filed under seal by the Plaintiff.

is public policy. In the Court's view, public policy warrants, at the very least, disclosure of Plaintiff's name and address in consideration of the broader community. The Court points to Plaintiff's own words stating he met "the majority of [his] victims while shopping." (Doc. 14, p. 4). Shielding Plaintiff's location, especially when that location is already publicly available as a matter of public safety, does not stand to reason.

Nevertheless, the Court is empathetic with respect to Plaintiff's disinclination to publicly disclose medical or employer information. The Court tends to agree that this information qualifies as that of the utmost intimacy. Therefore, a partial Administrative Stay will be granted, and the seal will remain in effect for the documents initially filed in this matter to protect Plaintiff's health and employer information. However, the Stay is denied with respect to Plaintiff's name and contact information. Further, the Plaintiff is permitted to request future documents containing health or employer information to be filed under seal. This Order will remain in effect while Plaintiff pursues an interlocutory appeal.

## II. MOTION FOR RECONSIDERATION REGARDING DENIAL OF MOTION FOR TRO

Plaintiff's motion was filed in response to the Court's order denying his TRO request. (Doc. 14). He argues that while no individual element rises to the level of irreparable harm, the totality of his circumstances present a "per se and

prima facie [example of] irreparable harm." (Doc. 14, pp. 5-6). In support of his argument, he points to lost wages from his inability to access and perform his work in addition to professional-reputation harm. (*Id.* at 2-3). He also asserts that the limitations of his supervision in the state of Arkansas are a gross violation of due process preventing him from maintaining daily activities, such as shopping, banking, driving, and litigation of his ongoing cases. (*Id.* at 4-6).

Requests for TROs are evaluated under the same standard as preliminary injunctions, see *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022), which consists of four Dataphase factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inv. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The movant has the burden of establishing that relief is proper. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). While no single factor is dispositive, relief will be denied if irreparable harm is not shown. *Id.* "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318-19 (8th Cir. 2009).

The relief plaintiff seeks is access to the internet to perform his work as a

paralegal, bank, manage family security via cameras and tracking systems, drive and navigate, and shop. He also requests to communicate with merchants and others outlined in his original Motion (Doc. 3). (Doc. 14, p. 4). With respect to his work, plaintiff asserts he has lost at least a week's wages and risks reputational damage with his employer due to his inability to perform his job. (*Id.* at 2-3). The Court notes that damages is not an avenue through which a party may seek a TRO. *See Gen. Motors Corp.*, 563 F.3d 312, 318-19. While Plaintiff does not appear to be explicitly seeking damages, he uses damages as an avenue to argue irreparable harm that warrants a TRO. However, the Court is unpersuaded as the harm of lost wages could be adequately remedied by damages.

Plaintiff additionally asserts that, due to his employer's "own responsibilities and obligations," "it is easy to infer that if the actions by agents of the State of Arkansas continue to make Plaintiff unavailable, Plaintiff will suffer permanent loss of goodwill and professional reputation for reliability." (Doc. 14, p. 3). While the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury," the Court finds Plaintiff's assertions to be too speculative in view of the letter provided to Arkansas following his relocation. *See United Healthcare Ins. v. AdvancePCS*, 316 F.3d 733, 741 (8th Cir. 2003). The harm to reputation and goodwill cannot be speculative—it must

be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996).

This is particularly evident in the letter provided by his employer. (Doc. 2-4, pp. 25-27). The letter indicates that the employer has known Plaintiff for approximately 10 years, working as Plaintiff's "court-appointed defense investigator while he represented himself." (*Id.* at 25). The letter continues to explain how Plaintiff is, in effect, a stellar employee and highlights his reliability and consistency. (*Id.*). The employer "want[s] to keep [Plaintiff] and [] is willing to make substantial efforts to do so." (*Id.*). As explained in the letter, Plaintiff's employer has made substantial efforts to accommodate his working requirements pursuant to medical and personal reasons. (*Id.* at 26-27). Moreover, his employer is clearly aware of the restrictions and processes he needs to follow based on his status as a sex offender as accommodations were made pursuant to his bond conditions in Texas. (*Id.* at 26).

The Court believes any reputational harm is speculative in nature. Plaintiff "put[s] forth no specific examples to establish irreparable harm." *See Akindutire v. Northrop Gruman Sys. Corp.*, No. 26-1661, 2026 WL 1661915, at *9 (D. Minn. June 9, 2026) (slip opinion). He does "not point to any specific job opportunity he lost," termination, or "any example of how his reputation has

been tarnished." *See id.* As such, the Court finds these "general fears are too speculative to establish irreparable harm." *See id.* Plaintiff's employer is clearly aware of his past and likely understands that processes are required to ensure he remains in good standing while under state supervision.

With respect to the other items the Plaintiff asserts—banking, managing family security via cameras and tracking systems, driving and navigation, and shopping—the Court finds no threat of irreparable harm. In fact, alternative avenues exist for many of these daily life activities. While the Court recognizes that internet access does make day-to-day activities significantly easier, this does not rise to the level of irreparable harm that would warrant a TRO. As Plaintiff has failed to meet his burden of irreparable harm, relief via TRO will be denied. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## III. CONCLUSION

For the reasons given above, the Motion for Administrative Stay Pending Interlocutory Appeal is **GRANTED IN PART** and **DENIED IN PART**. **The Clerk is directed** to keep the seal in place for Docs. 1-7 pending the resolution of the interlocutory appeal. The Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED** this 23rd day of November 2026.

/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE